## Missouri, Kansas & Texas Railway Company of Texas v. Mrs. Kate M. Settle, Executrix.

Decided October 14, 1898.

**1. Abatement of Action for Personal Injury—Statute Not Retroactive.**

It was within the legislative power to make the Act of May 4, 1895, preventing the abatement of a cause of action for personal injuries to the health, person, or reputation by the death of the person injured, apply to causes of action existing at the time of its passage and which had not up to that time been abated by the death of the person injured.

**2. Pleading in Action for Personal Injury.**

Plaintiff's petition in an action for personal injuries is not demurrable because it seeks to recover the damages resulting from his exposure to cold after his injury, where such exposure is alleged to have been one of the proximate consequences of the defendant's negligence in causing the injury.

**3. Same—Averment of Negligence—Collision at Railway Crossing.**

An averment in a petition that a railroad crossing was approached negligently and carelessly, and without any care or caution, or the exercise of any diligence whatever, is broad enough to allow recovery upon any negligence shown in the running of a train as it approached the crossing, although it also avers that the whistle was not blown nor the bell rung.

**4. Damages for Personal Injuries—Charge of Court.**

An instruction in an action for personal injuries commenced by the person injured and continued by his executrix after his death, that the plaintiff is entitled to such an amount as would have compensated the deceased (had the suit been tried just before his death) for his loss of time, diminished capacity to make a living, and his physical and mental pain and suffering, is not subject to the criticism that it permits a recovery for loss of time, diminished earning capacity and physical and mental suffering, future as well as past.

**5. Same—Contributory Negligence.**

The objection to a charge on contributory negligence that it is too general and does not particularize the acts and omissions relied upon, is not ground for reversal in the absence of special requested charges upon the point.

**6. Same—Exposure to Weather.**

Damages resulting from exposure to the weather, which was the proximate result of the negligence of a railroad company in causing a collision at the crossing of two roads, may be recovered from the company chargeable with the negligence.

**7. Same—Facts and Charge of Court.**

For facts showing actionable negligence on part of a railway company resulting in a collision of trains at a crossing, with proper charge of court relating thereto, see the opinion.

**8. Same—Survival of Action—Mental Anguish.**

The survival under the Act of May 4, 1895, of a cause of action for personal injuries after the death of the person injured, carries with it the right to recover for mental anguish or suffering of the deceased.

**9. Same—Damages Where Plaintiff Subsequently Dies.**

Where, pending an action for personal injuries, the plaintiff dies of consumption, compensation is to be made only for the damages sustained up to the time of death.

APPEAL from Harris. Tried below before Hon. W. H. WILSON.

*Jones & Garnett,* for appellant.

*O. T. Holt,* for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—Appellee's testator, W. E. Settle, while acting in the capacity of conductor upon a passenger train of the Houston & Texas Central Railway Company, was injured on the 25th day of December, 1894, in a collision between his train and the train of appellant, and brought this suit on the 23d day of December, 1895, against appellant to recover damages resulting from such injuries. He died on the 14th of January, 1897, while the action was pending, leaving a will by which appellee was made his executrix, and she subsequently made herself plaintiff and prosecuted the action to the judgment from which this appeal is taken. The action was based upon negligence of the servants of the appellee who operated its train, which was alleged as follows:

"Defendant negligently and carelessly, and without any care or caution, approached the said crossing with its engine without stopping or blowing its whistle or ringing the bell, or giving any warning or exercising any care or diligence whatever, but was running its train at a rapid and dangerous rate of speed, to wit, twenty miles per hour, and by reason thereof ran into and collided with the train of the Houston & Texas Central Railroad, on which the deceased was a passenger and conductor; by which collision one of the cars in said train was damaged and demolished, and the deceased, W. E. Settle, was seriously and permanently injured by reason of said collision, caused by the negligence and carelessness of defendant."

The defendant answered by general denial and by a special plea charging contributory negligence on the part of the deceased in failing to keep a lookout at the crossing of the two roads where the collision occurred, and in failing to stop his train before passing the crossing. The evidence showed that the roads of the two companies crossed each other at a point in Ellis County about a mile and a half west of Waxahachie. On the evening of December 25, 1894, the train on which Settle was conductor left Waxahachie and reached the crossing in question on time. The train was stopped and the usual signals for the crossing were given. The engineer looked along the line of appellant's road, and, seeing no train, proceeded to cross. While his train was upon the crossing he observed the headlight of appellant's train approaching rapidly from the west or northwest. At a short distance before reaching the crossing appellant's train had to pass through a cut and around a curve, so that it could not have been sooner seen by Settle and his co-employes. Upon seeing the train, the engineer upon Settle's train increased its speed and endeavored to clear the crossing in time to avoid a collision. All the cars had gotten across except the last, and that was struck by the engine of appellant's train. The coach was broken into and overturned, and Settle and others were injured. The evidence shows, that at the place where appellant's train usually stopped for this crossing its engineer undertook to apply the airbrakes for the

purpose of stopping, but discovered that they would not work; he then reversed his engine and applied sand to the track, and this is all the engineer could do to stop the train with the engine. The evidence, however, warrants the further conclusion, that upon discovering he could not stop the train with the air brakes, he did not give any signals of its approach, and that, had he done so, those upon the other train would have received notice of the danger in time to have avoided the accident, either by not entering upon the crossing or by getting across in time to prevent a collision. The air brakes on appellant's train had been frequently used on this trip from Dallas to the point in question, the last time at a place about four miles distant therefrom, and had been found in good order and to operate satisfactorily. After the collision, it was found that the angle cock upon the air pipe between the tender and the next car behind it had been turned so as to shut off the air and make it impossible for the engineer to apply the air to the brakes upon the cars behind the tender by the use of the appliances upon the engine. How this occurred is not shown further than by the statement that after the collision two persons, apparently tramps, were seen to get up from the ground at a point opposite the platform of the car behind the tender and run away. The evidence does not show whether or not the cars were equipped with brakes which could have been applied by the brakeman who was present on the train. The evidence does show that there were arrangements upon the passenger coaches by which the conductor might apply the air to the brakes, but whether or not this could be done with the angle cock closed down is not shown. It appears that there is a signal whistle to be given by the engineer, known as the signal for brakes, with which the conductor and brakeman were acquainted, and that this signal was not given by the engineer.

We conclude that the jury were warranted in finding that, in failing to give proper warning of the approach of their train, the appellant's employes were guilty of negligence which caused the collision, and that Settle was guilty of no negligence which should preclude plaintiff from recovery. The evidence further shows, and the jury found, under instructions from the court, that Settle did not die from the effects of the injuries, but from other causes. By force of the collision Settle was thrown upon his head, and, as he expressed it, his neck was nearly broken. He was scarcely able to get out of the wrecked car, but, on account of its having taken fire, he did so; was helped down from the outside of it, and then started to walk into Waxahachie to report the accident; but after he had gone a short distance he fainted and lay for some time unconscious. The weather was cold and he was exposed to its effects on account of the collision, and cought a cold which aggravated the injuries which he had received. He was bruised and injured in his neck, hip, wrist, and hand. He was confined to his bed nearly three weeks. His neck remained stiff from the time he was injured until his death, and he walked in a constrained manner. His salary as conductor was continued during the time he stopped work, which was until February 1, 1895. After that date

he went back into the service and continued it until the middle of January, 1897. He did not, however, work constantly, and when he did work he experienced difficulty in performing his duties on account of his physical condition. His salary was at the rate of $110 per month, and besides that, before his injuries, he earned money which, together with his salary, amounted to about $200 per month. He was 39 years of age at the time of the accident. The evidence, however, shows that before the accident his throat was diseased, and that eventually this was ascertained to be consumption, from which he died. Some time before his death he lost his voice and became incapable of discharging the duties required of him as conductor. The evidence renders it probable that both the diseased condition of his throat and the injuries which he received and the effects of the exposure contributed to the physical condition which made it necessary for him to abandon his work.

The jury found a verdict for $6500, which we have concluded is excessive to the amount of $3000. The view of the law upon which this conclusion is partly reached will be expressed further on.

*Conclusions of Law.*—1. Under its first assignment of error, appellant contends that the court should have sustained its general demurrer to appellee's petition, on the ground that the cause of action which had accrued to Settle, and which the present plaintiff sought to prosecute, had abated upon Settle's death. By the Act of May 4, 1895, it is provided, "That from and after the passage of this act, causes of action upon which suit has been or may hereafter be brought by the injured party for personal injuries other than those resulting in death, whether such injuries be to the health or to the reputation or to the person of the injured party, shall not abate by the reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued; but in the case of the death of either or both, such cause of action shall survive to and in favor of the heirs and legal representatives of such injured party, and against the person, receiver, or corporation liable for such injuries, and his legal representatives; and, so surviving, such cause may be thereafter prosecuted in like manner and with like legal effect as would a cause of action for injuries to personal property."

This statute, by its express terms, prevented an abatement of the cause of action which accrued to Settle and which had not abated at the time it took effect. It is contended that, because the cause of action accrued before the passage of the act, the law is retroactive in its effect, and is therefore unconstitutional. The answer is, that no defense had accrued to appellant before the law was passed. Settle was alive and the cause of action was in existence. Had he died and his cause of action abated before the passage of the act, the question would be different, for then a complete defense would have become vested in the defendant; but, inasmuch as the right of action was perfect when the statute was passed, it was within the power of the Legislature to prevent the loss of it, in future, through Settle's death.

2. The court did not err in overruling appellant's exception to that part of the petition which sought to recover damages resulting from Settle's exposure to cold after his injury. This was not set up as a distinct cause of action, but was simply alleged as one of the proximate consequences of appellant's negligence in causing the collision.

3. The charge of the court, to which objection is made under the fourth and fifth assignments of error, is not open to the objection that it submitted questions not raised by the pleading. The petition was broad enough to allow recovery upon any negligence shown in the running of the train as it approached the crossing. The allegation is, that the crossing was approached negligently and carelessly and without any care or caution, and without exercising any diligence whatever. The fact that the pleading also averred that the whistle was not blown nor the bell rung did not, we think, restrict the plaintiff to proof of those facts as the only negligence on which she could rely. As we have seen, however, the absence of those signals is made the ground of our finding of negligence. It is immaterial for us to inquire whether or not negligence could be imputed to appellant for approaching so near to the crossing at such a rate of speed that it could only control the movement of its train by the air brakes without knowing that they were in order, for, as will be seen further on, the court below instructed that the failure to stop the train would be excused if the train was equipped with proper air brakes, and if the servants of appellant were not negligent in not sooner discovering that such brakes were out of order and used all other means to stop the train after making such discovery. Another objection to the charge, raised by the propositions under these assignments, is that it gives an improper measure of damages. The charge states the measure of damages thus: "You will find for the plaintiff, Mrs. Kate M. Settle, executrix, such an amount as, under the evidence, you find would have compensated the deceased W. E. Settle (had this suit been tried just before his death) for his loss of time, diminished ability to make a living, his physical and mental pain and suffering." The objection urged is, that Settle, if the suit had been tried just before his death, would have been entitled to recover not only for the loss of time and the diminished ability to make a living and physical and mental suffering which had already happened, but for such as the jury might find it probable would afterwards occur. This contention sounds plausible, but we think it is not sound. It will be observed that the charge does not refer to any right of the plaintiff to recover for any damage which might have accrued to Settle had he not died, but its language plainly refers to damages which had actually been suffered in the particulars mentioned. No jury of ordinary intelligence could assume that any damages could have accrued after Settle's death. Abstractly, the measure of damages by which plaintiff's right to recover is governed is exactly the same as that according to which Settle could have recovered had he lived and prosecuted the action to judgment. The statute makes it so. Settle's damages would have been limited by the period of his natural life. So are those which plain-

tiff has a right to recover. The difference in the two states of case would be simply one of fact. In the one instance, Settle being alive, the jury would have been required to estimate the probable duration of his life and to allow all damages accruing during such time, while in the other, death having already occurred, the estimate would be limited to the time he actually lived. No jury, in either case, could ever assume that damages could accrue after his death.

4. The objection to the charge on the subject of contributory negligence, that it is too general and does not particularize the acts and omissions in which Settle is alleged to have been negligent, can not be held ground for reversal, in the absence of requested special charges upon the point.

5. The portion of the charge complained of in the seventh assignment of error does not assume or intimate that in the opinion of the court plaintiff had a cause of action of any character. That question is fairly submitted to the jury by other parts of the charge.

6. The court did not err in the part of the charge which allowed a recovery for the consequences of exposure to the weather, if the plaintiff was otherwise entitled to recover, and if such exposure was the proximate result of defendant's negligence. There is no comment upon the evidence in this instruction, but it simply submits to the jury a distinct element of damage, with the rule by which plaintiff's right to recover upon it is to be determined.

7. The tenth assignment of error is taken to a supplemental charge given by the court, which is the same as a special charge requested by the appellant, except the concluding portion of it, which qualifies the rule which appellant requested the court to give. The twelfth assignment of error complains of the refusal to give the special charge without qualification. The charges are too long to insert. They are addressed to the facts, shown by the defendant, as to the condition of the air brakes. The appellant sought to have the court to instruct that, if such condition were found to have come about without negligence on the part of its employes, and that such employes, after discovering such condition, did all they could to stop the train, a verdict for the defendant would necessarily result. The court qualified the instruction so as to make those facts excuse the failure to stop the train, but added, "but in this event there will still be left for your consideration the question whether there was, in other respects, any negligence of the defendant for which, under the main charge, they could be held liable, and also the question of contributory negligence." We think it is evident from the facts which we have stated that the qualification was proper. Even if the proposition given by the court was correct, which we find it unnecessary to decide, and if it be conceded that the failure to stop the train was justified by the facts stated, it can not be conceded that the failure to give warning of its approach to the crossing at which another train was due, and at which a collision might have been foreseen, was excusable.

8. The additions made by the court to the special charges set out in

the eleventh and fifteenth assignments of error state the law correctly, and were properly made.

9. The requested instruction to the effect that the plaintiff was not entitled to recover for mental anguish or suffering of deceased was properly refused. The statute makes the cause of action which accrued to Settle survive to his heirs and legal representatives. For the same reason the charge mentioned in the nineteenth assignment of error was properly refused.

10. All of the assignments of error except that which questions the amount of the verdict are disposed of by what we have said.

11. The plaintiff was entitled to recover only such damages as her deceased husband sustained during his lifetime. The case is not one in which a plaintiff, who has been injured, is alive, and in which his injuries will therefore continue to affect him during the whole of his natural life. He lived but little over two years after he received the injuries, and compensation is to be made only for damages sustained during that period. It is also evident that his disease contributed in some measure to his sufferings and to the impairment of his earning capacity. As we have before said, we think the amount of the verdict is not warranted by any just view of the facts which can be taken, and that $3500 is the largest sum which the jury could properly have allowed. If appellee will remit the sum of $3000 the judgment will be affirmed for $3500 at her cost, otherwise it will be reversed and the cause be remanded.